UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No.: 09-CR-673 |
| v. | ) | |
| | ) | Hon. Virginia Kendall |
| RON COLLINS, | ) | |
| also known as "Ron Ron" | ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT CERTAIN RECORDINGS AND RESPONSE TO DEFENDANT'S MOTION IN LIMINE**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, respectfully moves *in limine* to admit at trial three consensually- recorded phone calls from November 2008 between defendant RON COLLINS and a confidential source. As set forth in greater detail below, the authenticity of the November 2008 recordings is established through the following ways: (a) the recording process; (b) the voice identification of participants on the recordings; (c) the characteristics and content of the recordings; (d) other corroborating evidence in the case; and (e) the chain of custody of the recordings; therefore, the recordings are admissible at trial. In addition, the government respectfully requests that the COLLINS' motion *in limine* to exclude the three November 2008 recordings and additional recordings from December 2008, *see* Def. Mot., Dkt. No. 79, based on objections of authenticity, relevance, and hearsay be denied. In support of its motion *in limine* and response to COLLINS' motion, the government states as follows:

**I.     FACTUAL BACKGROUND**

On August 6, 2009, a grand jury returned an indictment against COLLINS charging him with conspiring to knowingly possess with intent to distribute and to distribute 5 kilograms or more of cocaine and 1 kilogram or more of heroin, in violation of Title 21, United States Code, Section 846. Specifically, confidential source information, recorded phone calls, phone records, and the analysis

of COLLINS' financial records revealed that between in or about 2005 and in or about November 2008, COLLINS purchased for redistribution multi-kilogram quantities of cocaine and heroin.

As part of the DEA's investigation into defendant, in November 2008, agents directed a confidential source ("CS1") who was cooperating with law enforcement to make a series of consensually-recorded phone calls to COLLINS. Specifically, CS1, who was located in Mexico, consensually-recorded three phone calls to COLLINS at 773-691-1702 on November 25, 2008, November 29, 2008, and November 30, 2008 (the "November 2008 recordings"), respectively. Over the course of these three phone calls, COLLINS discussed receiving 30 kilograms of cocaine from CS1 on credit for $28,000 per kilogram.

On December 1, 2008, CS1 provided the recording device with the November 2008 recordings to DEA Special Agent Jacob Galvan, who was also in Mexico. Agent Galvan downloaded the recordings onto a CD-rom and sent the disc to DEA Special Agent Eric Durante on or about December 8, 2008. Agent Durante then entered the CD-rom containing the November 2008 recordings into evidence in Chicago, Illinois. On or about December 1, 2008, while in Mexico, DEA Special Agent Matthew McCarthy took possession of, among other things, the cell phone that CS1 used to call COLLINS. On or about December 2, 2008, in Chicago, CS1, in the presence and at the direction of a monitoring agent, consensually recorded five phone calls with COLLINS ("December 2008 recordings"). On this date, CS1 both called COLLINS and received phone calls from him at the same phone number that CS1 had used in Mexico to call COLLINS, 773-691-1702. Phone records obtained for 773-691-1702 for the period between November 17, 2008 and December 11, 2008, did not provide a subscriber name, but showed that the user of the telephone called or received calls from only one phone number that was preceded by the country code of "52"

2

associated with Mexico. In addition, the calls' dates, times, and duration correspond with the November 2008 recordings.

The government now moves *in limine* to admit the November 2008 recordings on the basis of the recordings' authenticity. COLLINS objects to the admissibility of the November 2008 recordings without the testimony of the monitoring agent or a participant to the conversation. *See* Def. Mot. at 2. COLLINS further objects to both the November 2008 recordings and the December 2008 recordings on grounds of relevance and hearsay.[1] *Id.* at 3-5. For the reasons set forth below, the government's motion *in limine* should be granted and COLLINS' motion, which lacks merit, should be denied.

II. **ARGUMENT**

    A. **Because the Government Can Establish the Authenticity of the November 2008 Recordings, Such Recordings are Admissible Without the Testimony of a Participant or Monitoring Agent.**

The Seventh Circuit has held that a party offering recordings into evidence must prove by clear and convincing evidence that the recording is true, accurate, and authentic. *See, .e.g., United States v. Westmoreland*, 312 F.3d 302, 311 (7th Cir. 2002). The offering party may meet that burden by establishing a recording's chain of custody or by otherwise establishing a foundation as to the trustworthiness and accuracy of the evidence. *See, e.g., United States v. Thomas*, 294 F.3d 899, 904 (7th Cir. 2002). "Authenticity" is a conclusion that evidence is, in fact, what its proponent claims.

---

[1] COLLINS does not challenge the authenticity of the December 2008 recordings, which the government will seek to introduce at trial through the testimony of the monitoring agent. The foundation for recordings may be provided circumstantially through evidence that the events discussed on the tapes in fact occurred and that the purported speakers on the recordings in fact participated in those events. *See, e.g., United States v. Restrepo*, 814 F.2d 1236, 1241 (7th Cir. 1987); *see also United States v. O'Connell*, 841 F.2d 1408, 1421 (8th Cir. 1988) ("In view of the identity between the scenario arranged on the telephone and that subsequently enacted, . . . 'the substance of the communication itself may itself be enough to make prima facie proof.'" (quoting *United States v. Bonanno*, 487 F.2d 654, 659 (2d Cir. 1973)).

*See* Fed. R. Evid. 901.

    **1.    Proof of Authenticity Does not Require the Testimony of a Participant or Monitoring Agent**.

Although defendant claims that the recordings cannot be admitted without the testimony of an agent who monitored the call or a participant to the conversation, defendant does not cite a single case that so holds. In fact, there is no such requirement for a recording to be authenticated. The jury, as fact-finder, is the ultimate arbiter of whether real evidence, including recordings, is authentic. *See United States v. Wilson*, 973 F.2d 577, 580 (7th Cir. 1992) (holding that "the jury is generally entitled to determine whether the recordings are genuine"); *United States v. Zambrana*, 864 F.2d 494, 498 (7th Cir. 1988) (holding that it is up to the jury "to determine the trustworthiness of the tape recordings"); *United States v. Andreas,* 23 F.Supp.2d, 835, 841, *aff'ed by* 216 F.3d 645, 655-56 (7th Cir. 2000). The role of the trial court is to determine, as an initial matter, if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The test is whether any rational juror could possibly conclude that the evidence in question is authentic. *See United States v. Andreas,* 23 F.Supp.2d at 840; *Ricketts v. City of Hartford*, 74 F.3d 1397, 1411 (2d Cir. 1996) (tape authentication). Once the proponent of the evidence makes out a prima facie showing of authenticity, then the evidence should be submitted to the jurors for consideration of its authenticity, and the burden shifts to the opponent of the evidence to convince them that the evidence is not authentic. The prima facie showing need not consist of a preponderance of the evidence. *Zenith Radio Corp. V. Matsushita Electric Industrial Co.*, 505 F. Supp. 1125, 1219 (E.D. Pa. 1980), *aff'd in part, rev'd on other grounds*, 723 F.2d 238 (3rd Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986).

The requirement of the prima facie case is flexible. Courts have "'eschewed any formalistic

approach to the admission of tape recordings or copies thereof.'" *See Smith v. City of Chicago,* 242 F.3d 737, 741 (7th Cir. 2001) (quoting *Stringel v. The Methodist Hospital of Indiana, Inc.*, 89 F.3d 415, 420 (7th Cir. 1996)). The foundation for the admission of a taped conversation may be "circumstantial or direct, real or testimonial, and need not conform to any particular model." *United States v. Haldeman*, 559 F.2d 31, 108 (D.C. Cir. 1976); *see also United States v. Puerta Restrepo*, 814 F.2d 1236, 1239 (7th Cir. 1987) (authentication may be established by circumstantial evidence).

Rule 901(b) gives ten examples of authentication sufficient under the Rule, "[b]y way of illustration only, and not by way of limitation. . . ." Only one of the ten examples involves "[t]estimony of witness with knowledge. . . . [t]hat a matter is what it is claimed to be." Fed. R. Evid. 901(a)(1). Another possible means of authentication includes "testimony describing the process or system that created the tape" *United States v. Dale*, 991 F.2d 819, 843 (D.C. Cir. 1992). "There is simply no requirement that the tapes be put in evidence through the person wearing the recorder or, for that matter, through a contemporaneous witness to the recorded conversations." *United States v. Fuentes*, 563 F.2d 527, 531-32 (2d. Cir. 1977) (citations omitted); *see Andreas*, 23 F.Supp.2d at 840-41; *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990).

For example, in *United States v. Andreas*, the court admitted recordings based on evidence of a chain of custody coupled with independent corroborating evidence, including FBI agents who testified to the chain of custody and the voice identity of the participants; intrinsic evidence of authenticity within the recordings; testimony of coconspirators, who had been recorded in other conversations referring to the conversations in the recordings at issue; and expert testimony to address an issue of reuse and "redubbing" of the tapes, in order to establish that the recordings were genuine and unaltered. 23 F.Supp.2d at 841. As another example, in *United States v. Bright*, 630

F.2d 804, 819 (5th Cir. 1980), the Fifth Circuit found that tapes were properly authenticated by circumstantial evidence, even though one of the parties to the conversation, the government informant, was dead, and the other party was the defendant. *See also Fuentes*, *supra* (upholding authentication of tapes where no monitoring and informant disappeared).

Courts also have found a prima facie showing of authenticity even where the tapes in question were of unknown or extragovernmental origin—without the "presumption of official regularity" associated with government tapes. *See United States v. Matta-Ballesteros*, 71 F.3d 754, 768 (9th Cir. 1995) (audiotapes of agent's torture and execution seized from co-defendant properly authenticated; approving use of circumstantial evidence as "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification" (quotations and citations omitted)); s*ee also United States v. Kandiel*, 865 F.2d 967, 974 (8th Cir. 1989); *United States v. O'Connell*, 841 F.2d 1408, 1420 (8th Cir. 1988).

In *United States v. Khorrami*, 895 F.2d 1186 (7th Cir. 1990), the government prosecuted a threatening communications case relying, in part, on messages left by an anonymous caller on the answering machine of the Jewish National Fund in New York City. The government offered evidence that identified the defendant as the speaker based on the content of the tape and circumstantial evidence. For at least some of the tapes there was no listener present when the defendant left his message, and thus no one could state that the tape played in court had not been altered by someone acting on their own agenda in an emotionally-charged case. The court of appeals upheld their admission. *Id.*

### 2. The Government Can Make a Prima Facie Showing of Authenticity at Trial.

At trial, the government will offer the following evidence of the authenticity of the

November 2008 recordings:

### a. The Recording Process

First, the government will present evidence regarding the recording process. Unlike the tapes in *Matta-Ballesteros, Kandiel*, and *O'Connell, supra*, this is not a case where the proffered recordings are of unknown or uncertain origin. These conversations were recorded by known processes, using appropriate, functional technology. Agent Galvan will testify that he received the recording device, which was a standard digital recorder, on or about December 1, 2008 from CS1. Special Agent Galvan will further testify that he downloaded the three recordings directly from the digital recorder, which had appropriate functional technology allowing such downloading.

### b. Voice Identification of Participants on the Recordings

Second, the government will present evidence as to the voice identification of the participants on the November 2008 recordings. Specifically, on or about August 18, 2009, Agent Durante was present for COLLINS' arrest.[2] Agent Durante spoke with COLLINS that day during an interview and became familiar with his voice. From this interview, Agent Durante was able to identify COLLINS as one of the speakers on the November 2008 recordings. In addition, Special Agent Durante became familiar with CS1's voice during the DEA's investigation and he was able to identify CS1 as the other speaker on the November 2008 recordings. A person may opine about the identity of a speaker based on "hearing the [subject's] voice at any time," before or after the recording or investigation. *See* Fed. R. Evid. 901(b)(5). Furthermore, the person identifying the voice need not be a participant or contemporaneous listener of the particular conversation, as long

---

[2]In addition, Agent Durante overheard one of the November recordings with COLLINS while on another telephone with CS1, via speakerphone.

as he is familiar with the voice. *See United States v. Cruz-Rea,* Nos. 09-3591, 10-1355, — F.3d —, 2010 WL 4628670, *3 (7th Cir. Nov. 17, 2010) (upholding voice identification based on a fifteen second voice exemplar compared with 24 wiretapped telephone conversations); *United States v. Neighbors,* 590 F.3d 485, 493 (7th Cir. 2009); *United States v. Carrasco*, 887 F.2d 794, 803-4 (7th Cir. 1989).

### c. The Intrinsic Characteristics and Content of the Recordings

Third, the recordings themselves include evidence showing internal consistency, and thus authenticity, of the recordings. Evidence may be authenticated by the "distinctive characteristics" of the evidence itself. Fed. R. Evid. 901(b)(4). According to Rule 901(b)(4), this includes "[a]ppearance, contents, substance, internal patterns . . . taken in conjunction with circumstances." *See Carrasco,* 887 F.2d at 803-04; *see United States v. McMillan*, 508 F.2d 101, 105 (8th Cir. 1974) ("In view of the identity between the scenario arranged on the telephone and that subsequently enacted, . . . 'the substance of the communication may itself be enough to make prima facie proof'") (quoting *United States v. Bonanno*, 487 F.2d 654, 659 (2d. Cir. 1973)). The court in *Bright, supra*, noted that the tape at issue contained a "running [internally consistent] conversation," indicating that the CI had not manipulated the tape even though she could not be seen during the meetings.

In this case, based on the content of the recordings alone, there is no reason to conclude that the recordings are anything other than what they purport to be. This real evidence manifests an abundance of unique characteristics. These are not generic objects or documents, or recordings of isolated sounds, or even sounds of voices, that could be interpreted in different ways, or which have no meaning without reference to other evidence. These recordings contain entire, continuous conversations, in which identifiable speakers—COLLINS and CS1—convey information in a logical

and coherent manner. As in *Bright*, the recordings have the internal consistency associated with an actual conversation. The Court can satisfy itself that this is true before trial by reviewing any or all of the transcripts. The Court can also listen to any of the recordings themselves. *See Haldeman*, 559 F.2d at 109 (prima facie showing of authenticity based on trial court's review of tapes, which showed no unusual pauses or conversation fragments).[3]

### d. Extrinsic Corroboration

Fourth, the recorded conversations are uniquely identifiable because the information they convey comprises facts relevant to this case. As contemplated by Rule 901, evidence external to the tape—the other evidence in the case— corroborates the content, and thus the authenticity, of the recordings. Simply put, COLLINS and CS1 were recorded discussing plans and events the jury will know to be consistent with the manner in which the drug conspiracy operated based on the testimony of other cooperating witnesses who were participants in the conspiracy (the "co-conspirators"). Specifically, COLLINS asked CS1 to front him approximately 30 kilograms of cocaine. In addition, COLLINS and CS1 discussed the money that COLLINS still owed CS1. In the recorded call from November 25, 2008, COLLINS referred to previous occasions when CS1 fronted COLLINS 50 or 60 kilograms at a time. The co-conspirators will testify about the way in which the conspiracy operated, the quantity of drugs that COLLINS received, and the payments they received from COLLINS on behalf of CS1, which testimony is consistent with the November 2008 recordings. The co-conspirators further will testify that they did not have direct telephone conversations with

---

[3]Of course, the Court can hear all of the tapes published at trial after admitting them provisionally, and thus will have an additional opportunity to evaluate prima facie authenticity. *See Huddleston, supra* (trial court may allow proponent to introduce evidence and "at a later point in the trial assess whether sufficient evidence has been offered to permit the jury to make the requisite finding" that the condition to relevance has been satisfied).

COLLINS; rather, CS1 spoke to COLLINS by phone to arrange the delivery of the cocaine by the co-conspirators, which method is consistent with the content of the November 2008 recordings.

The situation is similar to that in *Kandiel*, 865 F.2d at 974, where the court found sufficient evidence of authenticity to admit tape recordings of conversations between the defendant and other individuals, even though the government did not call a participant to those conversations as a witness. The government offered the defendant's brother, who identified the speakers.

> Ahmed Kandiel [the brother] testified that the tapes were made in Egypt and sent to [defendant] by their mother and father while Ahmed was living in Egypt. The contents of the tape recordings have numerous references to people, places, and activities that were corroborative of other testimony in the record. We believe that the government has offered sufficient circumstantial evidence to establish the prima facie authenticity and correctness of the tapes.

*Id.; see O'Connell*, 841 F.2d at 1419 (tapes seized from defendant's warehouse properly authenticated in part by toll records for warehouse phone and corroboration of contents of tape by testimony of other conspirators).

The contents of the tapes also provide an approximate date for the conversations. The three recordings from November 25, 29, and 30, 2008 are part of an ongoing discussion regarding the sale of kilograms to COLLINS and corroborate each other. In the recording from Tuesday, November 25, 2008, CS1 asked whether that day was Tuesday. COLLINS confirmed that it was. CS1 then told COLLINS to give CS1 until Friday or Saturday to get the kilograms of cocaine to COLLINS. CS1 and COLLINS then talked on Saturday, November 29, 2008 in a second recorded call. In that Saturday, November 29, 2008 call, CS1 told COLLINS that CS1 would call him back. In the recorded call on the next day, November 30, 2008, CS1 told COLLINS that CS1 forgot to call back COLLINS yesterday. *See United States v. Rosenthal*, 793 F.2d 1214, 1239 (11th Cir. 1986) (prima facie showing of authenticity for seized tape without testimony of participant to conversation; date

10

established by date of seizure, content of conversation, and lodging records corroborating content).

### e. Chain of Custody

Finally, the government has maintained custody of the recordings throughout the investigation and since the investigation concluded. Evidence of chain of custody is one way to establish a foundation for a tape. *See, e.g., Westmoreland*, 312 F.3d at 311. Although CS1 operated the recording device for all three recordings outside the presence of agents, Agent Galvan will testify to collecting from CS1 the recording device one day after the last recording and downloading the recorded calls onto a CD-rom that he sent via Federal Express to Agent Durante. After receiving the disc, Agent Durante will testify that he placed the disc of the three recorded calls into evidence, which is where the CD has remained. Additionally, Agent McCarthy will testify that he collected from CS1 on or about December 1, 2008, the cell phone used by CS1 to make the recorded calls on both November 25, 29, and 30, 2008, and then in Chicago on December 2, 2008. The cell phone has since remained in government custody.

The above-described chain of custody provides two assurances of authenticity. First, because the government obtained the tapes close in time to the events they purport to depict (within a day of the last recordings and within 6 days of the first recording), no private individual with an incentive to alter the tapes had an extended opportunity to do so. Second, the chain of custody considerably narrows the time frame in which the recorded conversations occurred, and corroborates the apparent dates of the conduct recorded and events discussed.

### 3. There Is No Challenge or Evidence of Any Manipulation of the Recordings.

COLLINS has not raised nor is there any evidence suggesting that the recordings misrepresent the conversations. *See United States v. Long*, 651 F.2d 239, 243 (4th Cir. 1981)

(defendant unsuccessfully challenging authenticity of recordings "presented no evidence suggesting that the tapes misrepresent the conversations, even though [defendant] would be aware of such misrepresentation, at least regarding taped conversations in which he was a participant"). "Although it is conceivable that sophisticated redubbing could escape detection by normal listening, real evidence is not [in]admissible [sic] because one can conjure up hypothetical possibilities that tampering occurred." *Haldeman*, 559 F.2d at 109.[4] Moreover, evidence of recording manipulation, even if it existed, would go only to weight, and not to admissibility. *United States v. Santana*, 898 F.2d 821, 823 (1st Cir. 1990) (attacks on foundation testimony affect weight, not admissibility; testimony of participant to conversation provided but not required to authenticate tapes); *Kandiel*, 865 F.2d at 974 (when authenticating tapes, questions of reliability go to weight, not admissibility); *Ballou v. Henri Studios, Inc*, 656 F.2d 1147, 1154-55 (5th Cir. 1981) (after threshold showing of authenticity, doubts about possibility of alteration or contamination of evidence go to weight and not admissibility of evidence).

**B.     Both the November 2008 and December 2008 Recordings are Admissible As Relevant Evidence of the Charged Offense.**

COLLINS acknowledges that the recordings "could be construed" as COLLINS' attempt to get CS1 to front COLLINS drugs, so that he could sell the drugs and then pay CS1 and that COLLINS in some of the calls discusses a previous relationship with CS1, during which CS1 provided drugs to COLLINS. Despite this acknowledgment, COLLINS argues that the recordings are not admissible, asserting that the recordings are not evidence of acts or crimes that occurred in

---

[4]Courts have consistently acknowledged the contemporaneous manipulation (selectively taping the conversation as it occurs) is a far-fetched notion. Contemporaneous "editing" using the on-off switch is not likely to succeed because of the impossibility of anticipating undesirable comments by other participants to the conversation and excluding those comments from the recording without leaving sentence fragments. *See Fuentes*, 563 F.2d at 532.

the conspiracy, are not probative of any facts or events in this conspiracy, and are outside the dates of the conspiracy.

COLLINS is charged with participating in a drug trafficking conspiracy from approximately 2005 through approximately November 2008. The government anticipates that the evidence at trial will show that COLLINS conspired with numerous individuals in this drug trafficking conspiracy, including, among others, CS1's distribution crew members and CS1 up to the point when CS1 began cooperating against COLLINS.

### 1. The November Recordings

Even though CS1 was no longer a coconspirator by November 25, 2008, these recordings provide probative evidence of COLLINS' participation in a drug trafficking conspiracy, and specifically the fact that COLLINS previously conspired with CS1. Not only do the calls provide exemplary evidence of the manner in which COLLINS received fronted cocaine from CS1 in exchange for later payment during the time of the conspiracy, the calls contain specific references to previous occasions in which CS1—before CS1 cooperated against COLLINS—fronted COLLINS multi-kilograms of cocaine for which COLLINS paid CS1. The recordings are admissible as probative and relevant evidence of the conspiracy.

### 2. The December Recordings

COLLINS specifically argues with regard to the December 2, 2008 recordings that the recordings are outside the date of the charged conspiracy and thus not relevant. The charged conspiracy continued through approximately November 2008. As a preliminary matter, dates charged in the indictment must be "reasonably near" the evidence at trial of the exact date of the offense. *United States v. Blanchard*, 542 F.3d 1133, 1143 (7th Cir. 2008). The Seventh Circuit has

allowed for longer variances than the two days between December 2, 2008 and the last day of November 2008. *See, e.g, United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988) (concluding that 21-day variance between date proved at trial and "on or about" date alleged in indictment was "reasonably near").

Regardless whether or not the conspiracy ended shortly before the recordings on December 2, 2008, the recordings provide evidence probative of the conspiracy. In these recordings on December 2, 2008, COLLINS expressed worry and increasingly suspicion toward CS1 about an individual who had been arrested and to whom CS1 had fronted drugs. Evidence of a conspiracy may include efforts to conceal a conspiracy from detection by law enforcement. *See United States v. Troop*, 890 F.2d 1393, 1404 (7th Cir. 1989) ("Avoiding detection by law enforcement officials clearly furthers the aims of a conspiracy."). These recordings are probative of COLLINS' concern and desire to conceal the activities of the charged conspiracy from law enforcement, particularly where COLLINS expressed suspicion regarding CS1's role in the individual's arrest. COLLINS is charged with conspiring with CS1, among others. COLLINS' recorded conversation with CS1 is evidence of that past drug trafficking relationship and thus probative of the offense. To the extent, COLLINS attempts to characterize this evidence as, at most, evidence under Rule 404(b),[5] he is incorrect; the recordings are evidence probative of the charged conspiracy.

These recordings provide probative evidence of the charged conspiracy and are thus admissible under Federal Rule of Evidence 401.

---

[5] COLLINS suggests in his motion that the deadline has passed for the government to provide notice of evidence that the government intends to admit under Rule 404(b). As acknowledged in pretrial motions and responses, the government has until January 25, 2011 to provide defense counsel notice of any Rule 404(b) evidence that the government intends to introduce.

14

C.   **The Statements in the Recordings are Admissible As Nonhearsay.**

COLLINS argues that the recordings of conversations between COLLINS and CS1 are inadmissible as hearsay statements because CS1 was not a coconspirator at the time of the calls. Although COLLINS is correct that CS1, at the time of the recordings, was not acting as a coconspirator, the conversations between COLLINS and CS1 are admissible as nonhearsay. COLLINS' own statements are admissible as nonhearsay admissions of a party opponent. Fed. R. Evid. 801(d)(1)(A); *United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006). Based on the admissibility of COLLINS' statements, it is well-settled law that CS1's statements are admissible as nonhearsay to provide context for COLLINS' statements. *See, e.g., United States v. Simmons*, 582 F.3d 730, 736 (7th Cir. 2009) (*citing Tolliver*, 454 F.3d. at 666 ("Statements providing context for other admissible statements are not hearsay because they are not offered for their truth.")).

**III.   CONCLUSION**

Based on the foregoing, the government respectfully requests that this Court: (1) grant its motion *in limiine* to introduce the 3 November 2008 recordings at trial based on the proffered showing of authenticity; and (2) deny COLLINS' motion *in limine* to exclude the November 2008 and December 2008 recordings.

        Respectfully submitted,
        PATRICK J. FITZGERALD
        United States Attorney

BY:   /s/ Halley B. Guren
       HALLEY B. GUREN
       RENAI S. RODNEY
       Assistant United States Attorneys
       219 S. Dearborn Street, 5th Floor
       Chicago, Illinois 60604
       (312) 886-4156

Date: December 10, 2010