* * *REDACTED* * *

09:51:49

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,            Case No. 1:09-cr-00673

  Plaintiff,                       Chicago, Illinois
                                     September 18, 2009
     v.                           Detention Hearing

RON COLLINS,

  Defendant.
-------------------------------

TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE VIRGINIA M. KENDALL
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    Office of the U.S. Attorney
                       By:  Halley B. Guren
                       219 S. Dearborn St., 5th Fl.
                       Chicago, IL 60604
                       (312) 353-5300

* * *REDACTED* * *

2

1

2

3    <u>APPEARANCES</u>:

4

5

6    For the Defendant:        Law Office of Michael F. Clancy
                                By:  Michael F. Clancy
7                               53 W. Jackson Blvd., Ste. 1401
                                Chicago, IL 60604
8                               (773) 427-0288

9

10   <u>Also Present</u>:          Victor N. Alvarez
                                U.S. Pretrial Services
11

12   <u>COURT REPORTER</u>:        FEDERAL OFFICIAL COURT REPORTER
                                April M. Metzler, RPR, CRR
13                               219 South Dearborn St., Rm. 2318-A
                                Chicago, IL 60604
14                               (312) 408-5154
                                April_Metzler@ilnd.uscourts.gov
15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by notereading.


* * *REDACTED* * *

* * *REDACTED* * *

3

| 10:03:42 | 1 | (Commenced at 10:03 a.m.) |

10:03:42  2  THE CLERK:  09CR673, United States versus Collins.

10:03:49  3  MS. GUREN:  Good morning, your Honor.  Halley Guren

10:03:52  4  on behalf of the United States.

10:03:52  5  THE COURT:  Good morning, Ms. Guren.

10:03:57  6  MR. CLANCY:  Your Honor, Mike Clancy, on behalf of

10:03:58  7  Ron Collins, who is in custody before your Honor.

10:03:58  8  THE COURT:  Good morning, Mr. Clancy.

10:04:00  9  Good morning, Mr. Collins.

10:04:00  10  THE DEFENDANT:  Good morning.  How you doing?

10:04:02  11  THE COURT:  Okay.  So I'm here for a detention

10:04:04  12  hearing.  I didn't get any filings.

10:04:05  13  Did you submit anything, Mr. Clancy?

10:04:06  14  MR. CLANCY:  No, your Honor.

10:04:07  15  THE COURT:  All right.  So it's -- the Government had

10:04:09  16  proffered last week, but I'll let the Government go through

10:04:12  17  its litany before -- or would you like to go first and tell me

10:04:16  18  your reasons for release?

10:04:17  19  MR. CLANCY:  We -- I can go first, if you wish.

10:04:19  20  THE COURT:  Okay.  That's fine then.

10:04:20  21  MR. CLANCY:  Judge, basically, I know this is a

10:04:23  22  presumption case, and the -- as you well know, as well as the

10:04:27  23  prosecutor, there's two aspects to release.  One is to

10:04:32  24  obviously protect society and the other is to assure the

10:04:37  25  defendant's appearance in court.  We have come up with a bond

* * *REDACTED* * *

* * *REDACTED* * *

4

| | | |
|---|---|---|
| 10:04:39 | 1 | package that I'll get to as far as the appearance in court. |
| 10:04:44 | 2 | But as to protect society, Judge, obviously, the |
| 10:04:48 | 3 | charges are serious.  Mr. Collins does have a background. |
| 10:04:50 | 4 | However, as this case went -- the indictment is for a time |
| 10:04:55 | 5 | period between '05 and November of '08.  Almost nine months |
| 10:04:59 | 6 | have passed since the activities that are indicted in this, |
| 10:05:03 | 7 | and I don't believe that in those nine months that Mr. Collins |
| 10:05:06 | 8 | could have been too much of a threat or immediate threat to |
| 10:05:10 | 9 | society or the Government wouldn't have waited nine months to |
| 10:05:13 | 10 | come and get him. |
| 10:05:13 | 11 | And, Judge, one of the things that I'm going to |
| 10:05:16 | 12 | proffer to you is -- that I have from going through the |
| 10:05:19 | 13 | discovery and investigating the case, and if the Government |
| 10:05:24 | 14 | disagrees with my proffer, they will obviously bring that to |
| 10:05:27 | 15 | your Honor. |
| 10:05:28 | 16 | But my understanding of the evidence is that |
| 10:05:30 | 17 | somewhere in the time period of November of 2008, October of |
| 10:05:36 | 18 | 2008, there were two informants who started setting up, I'll |
| 10:05:40 | 19 | say, local drug dealers on the South Side, and these two |
| 10:05:44 | 20 | informants were making phone calls trying to get people to |
| 10:05:49 | 21 | sting operations. |
| 10:05:51 | 22 | There was allegedly -- from listening to the tapes |
| 10:05:55 | 23 | provided and the discovery to me, there was a phone call made |
| 10:05:59 | 24 | to Mr. Ron Collins.  Mr. Ron Collins, for whatever reason, cut |
| 10:06:04 | 25 | the phone call off short and that was it. |

* * * REDACTED * * *

5

| | | |
|---|---|---|
| 10:06:07 | 1 | When Mr. Collins was arrested nine months later, the |
| 10:06:12 | 2 | agents had made reference to this phone call, and Mr. Collins |
| 10:06:15 | 3 | had made a statement, according to the discovery I have, that |
| 10:06:20 | 4 | Mr. Collins said, Yeah, I know you guys were upset because I |
| 10:06:23 | 5 | knew that phone call was set up.  And I knew you guys -- I was |
| 10:06:28 | 6 | going to get arrested. |
| 10:06:30 | 7 | And, Judge, this goes to both of my arguments, to |
| 10:06:34 | 8 | protect the society and appearance in court.  Mr. Collins, in |
| 10:06:39 | 9 | the nine months since he knew he was -- that they had tried to |
| 10:06:42 | 10 | set him up in November of 2008, in those nine months, |
| 10:06:46 | 11 | Mr. Collins did nothing to show your Honor that he wouldn't |
| 10:06:50 | 12 | appear in court.  Mr. Collins, in fact, went back home in |
| 10:06:53 | 13 | South Holland and stayed in South Holland with his girlfriend |
| 10:06:56 | 14 | and his child for nine months. |
| 10:06:58 | 15 | And the Government, knowing where he was in those |
| 10:07:01 | 16 | nine months in South Holland at his home, allowed him to stay |
| 10:07:05 | 17 | there for nine months.  And I think that goes to both |
| 10:07:08 | 18 | protecting society and appearing in court that Mr. Collins |
| 10:07:12 | 19 | knew full well, as acknowledged by the agents as well as |
| 10:07:16 | 20 | himself upon his arrest statement, that he knew he was going |
| 10:07:20 | 21 | to get arrested. |
| 10:07:20 | 22 | (Enter Mr. Alvarez.) |
| 10:07:21 | 23 | MR. CLANCY:  He knew that they had had informants |
| 10:07:27 | 24 | that were going to cause him to be arrested.  And I think that |
| 10:07:31 | 25 | that speaks loudly to your Honor as to his protection of |

* * * REDACTED * * *

* * *REDACTED* * *

6

| | |
|---|---|
| 10:07:36 | 1 |

society issue and appearance in court.

Furthermore, as to the appearance in court -- and I know that the Government and pretrial has made issue as to arrests, using aliases, and nonappearances in court. And, Judge, when looking at it, his criminal record starts when he's at the age of fifteen.

And he uses different names throughout the late '80s and early '90s, when he is an extremely young man, fifteen, sixteen, seventeen years old. And although I don't want to state that that's ancient history, your Honor, I think that the case that he caught in 2002 speaks a little bit more clearly and loudly as to how Mr. Collins reacts when he's faced with a serious case and his appearance in court.

If you look before the 2002 arrest, which is on page 7 of the pretrial report, that is an arrest for a cocaine felony for fifteen or more grams of cocaine. That case lasted four years, your Honor. And I pulled the certified conviction -- statement of conviction. He was actually found not guilty on the case. But it shows each and every court date Mr. Collins was there, other than one time.

And from my reading and from practicing in state court for almost twelve years, I can tell you that my reading is that that was an excused miss, because there's no warrant, there's no bond forfeiture. It just states simply -- and I'm going to tender this to your Honor -- that the defendant was

* * *REDACTED* * *

7

10:09:16  1  not in court.  It didn't say failed to appear, that there was

10:09:19  2  any kind of warrant.

10:09:20  3          And, Judge, that was an important case.  At this time

10:09:23  4  he's 27 years old.  Prior to that 2002 case, he had not had an

10:09:30  5  arrest since 1996, because I believe the '97 and '98 cases

10:09:36  6  under Ron C. Johnson, that is not him.  Those cases are from

10:09:40  7  Burlington, Iowa, Rock Island County.  And from going through

10:09:45  8  Mr. Collins' criminal history with him, he is -- he refutes

10:09:49  9  that those arrests are his.

10:09:51  10         And this is not someone who's saying, Hey, that's not

10:09:54  11  my criminal background.  He's taking responsibility for his

10:09:58  12  criminal background, but he does not believe that those

10:10:01  13  arrests, under the name of Ron C. Johnson, is him.

10:10:04  14         So, Judge, if you look at it, he's got arrests from

10:10:07  15  '91, '96, and then 2002, which is really the focal point here.

10:10:13  16  What did he do in '02?  Well, for four years he went to court

10:10:17  17  every month.  The court dates are nine pages long, and he

10:10:22  18  appeared in court each and every time and he was found not

10:10:25  19  guilty.  And that really is his only arrest, your Honor, in

10:10:31  20  his adult life.  And I don't mean adult by eighteen, but I

10:10:36  21  mean recent adult life at the age of 27, since he's had

10:10:40  22  children and somewhat been established in the construction

10:10:43  23  business.

10:10:45  24         Judge, also, there's some issue as to he did travel

10:10:49  25  outside the country recently.  And he had a thing where him

* * *REDACTED* * *

* * *REDACTED* * *

8

| | |
|---|---|
| 10:10:54 | 1 |
| 10:10:59 | 2 |
| 10:11:05 | 3 |

and his family and his girlfriend would go to Aruba for his

birthday, and it shows -- his passport activity shows those

trips to Aruba.  He also had taken a trip to Europe.

But, Judge, the important thing is is in the last

nine months, he could have been -- he could have taken a trip

and not come back.  He knew he was going to be placed under

arrest.  He knew that this day was coming.

You can tell from the 302s from the arrest, your

Honor, that he knew that this was going to happen, and he did

not then travel to Aruba, Puerto Vallarta, or Europe and hide

out and see if this would blow over.  He stayed right where he

lives now, and he lives on -- in South Holland with his

girlfriend and his child.

Judge, as far as a package that we've put together

for bond in this case that I think that would make your Honor

comfortable that he would -- not only that society would be

protected, but that he would appear in court, is, first of

all, I have his passport that the family has given to me today

and I'm going to give to pretrial today.

The second thing is, Judge, his father, Leroy

Johnson, and Leroy's wife Barbara are in court today.  Leroy

and Barbara, Judge, are impeccable citizens.  Barbara's been

working at AT and T for ten years.  Her -- Brenda -- I'm

sorry, it's Brenda, not Barbara.

Brenda is not the mother of the defendant.  Brenda

* * * REDACTED * * *

9

10:12:27  1  and Ron's father, Leroy, have been married for sixteen years.

10:12:32  2  Leroy has been working at the same company since 1973 as an

10:12:35  3  operator/technician at Air Corps Metal Steel (phonetic).  That

10:12:41  4  company's been around for decades, your Honor.  He's been

10:12:43  5  there since '73.

10:12:45  6        Mr. Johnson has two properties, which is the entirety

10:12:49  7  of his retirement portfolio, a property at ████████████

10:12:55  8  ████████████  and another property at ████████████████.

10:13:00  9  Both those properties with -- and even in today's market, your

10:13:05  10  Honor, their combined equity is 51,000, and I've submitted all

10:13:09  11  the needed paperwork to the Government to that respect.

10:13:12  12        Judge, they also have a minimal amount of savings,

10:13:17  13  somewhere around $10,000 in a bank account that Leroy would be

10:13:20  14  willing to go to Citibank right now and withdraw, if needed.

10:13:24  15        And my proposal is that if let out on bond, Ron would

10:13:28  16  live with his father and his stepmother at ████████████████

10:13:32  17  in Cal City, Illinois, under whatever conditions your Honor

10:13:36  18  would impose.

10:13:37  19        But, Judge, that is a package that is of no --

10:13:41  20  although 51,000 isn't the biggest bond we've heard of in these

10:13:45  21  courtrooms, to this family, to a steelworker and someone who

10:13:48  22  works at AT and T, that's all they have.

10:13:51  23        And for Brenda Johnson, who's not even the mother of

10:13:56  24  this defendant, to trust this defendant to appear in court and

10:14:01  25  follow the rules of bond and for Leroy Johnson to trust this

* * * REDACTED * * *

* * *REDACTED* * *

10

10:14:05  1  defendant to follow the rules of bond and show up in court I

10:14:09  2  think also speaks loudly to your Honor.

10:14:11  3      Judge, the last thing I'd like to say -- and probably

10:14:15  4  I wouldn't say it's the strongest of my arguments, but

10:14:19  5  something that I do think the Court should be well aware of --

10:14:22  6  is these informants who tried to ensnare Mr. Collins, here,

10:14:26  7  back in November of '08 and is pretty much a big part of the

10:14:30  8  Government's case against Mr. Collins, in the -- since

10:14:35  9  November of '08 'til present, there's been three other

10:14:38  10  gentlemen in different courtrooms in this district who have

10:14:42  11  been arrested pursuant to this investigation, that I know of.

10:14:46  12      And all three of those gentlemen have been let out on

10:14:50  13  bond.  And the numbers, as far as drug amounts and frequency

10:14:55  14  of dealings, are exactly on par with Mr. Collins.  They would,

10:15:02  15  in my opinion, be on the same level as Mr. Collins.  And, you

10:15:08  16  know, Kiley Murray was given a $250,000 secured bond by

10:15:15  17  property.  Justin Turner and Larone Price, who were actually

10:15:19  18  arrested in a sting operation of a purchase of 20 kilos, they

10:15:26  19  were arrested, I would say, red-handed so to speak.  They were

10:15:30  20  both let out on bond.  Justin Turner was let out on $100,000

10:15:35  21  secured bond and Larone Price was let out on a $10,000 secured

10:15:39  22  bond.

10:15:39  23      And I know, Judge, every judge is different and those

10:15:42  24  are in different courtrooms and we don't have a full idea of

10:15:45  25  what their situation was, but just --

* * *REDACTED* * *

11

| | | |
|---|---|---|
| 10:15:46 | 1 | THE COURT:  I mean, that's the most important -- |
| 10:15:48 | 2 | MR. CLANCY:  I understand. |
| 10:15:48 | 3 | THE COURT:  Whenever I hear a defense counsel say to |
| 10:15:51 | 4 | me, Well, this is just like another case -- of course, we |
| 10:15:54 | 5 | judges only look at all the facts and law in front of us and |
| 10:15:58 | 6 | we don't compare other cases like that.  We look to see |
| 10:16:01 | 7 | whether a statute applies to this case. |
| 10:16:04 | 8 | MR. CLANCY:  And that's why I preface it as not being |
| 10:16:07 | 9 | my main or my strongest argument. |
| 10:16:10 | 10 | I think my strongest argument, your Honor, is how he |
| 10:16:14 | 11 | dealt with the 2002 case, what he's -- that he didn't run when |
| 10:16:17 | 12 | he knew he was getting arrested in November of '08, and the |
| 10:16:21 | 13 | trust and the property that is being forwarded to your Honor |
| 10:16:27 | 14 | by his dad and his stepmother. |
| 10:16:31 | 15 | THE COURT:  Okay.  Do you have any substantiation for |
| 10:16:35 | 16 | his construction job? |
| 10:16:36 | 17 | MR. CLANCY:  Judge, I have not received that yet. |
| 10:16:39 | 18 | I'm trying to get my hands on his W-2s. |
| 10:16:43 | 19 | THE COURT:  Okay. |
| 10:16:43 | 20 | MR. CLANCY:  I know there is some tax issues that the |
| 10:16:46 | 21 | Government is going to be getting.  I believe his tax returns |
| 10:16:49 | 22 | are requesting -- trying to get the tax returns, and I'm in |
| 10:16:53 | 23 | the midst of trying to get that myself.  I do know that he |
| 10:16:55 | 24 | filed taxes and has some W2s.  I have not been able to get my |
| 10:16:57 | 25 | hands on those as of yet. |

* * *REDACTED* * *

* * *REDACTED* * *

12

| | | |
|---|---|---|
| 10:16:57 | 1 | THE COURT:  Okay.  And is it your position, as the |
| 10:16:59 | 2 | Pretrial Services Officer stated, that he's been unemployed |
| 10:17:03 | 3 | since June? |
| 10:17:05 | 4 | MR. CLANCY:  Yes, Judge.  And that is because of |
| 10:17:06 | 5 | there just hasn't been any work that has come to his company. |
| 10:17:09 | 6 | THE COURT:  Okay.  And the $3.2 million forfeiture |
| 10:17:17 | 7 | allegation, what is that based on, Ms. Guren? |
| 10:17:19 | 8 | MS. GUREN:  Your Honor, that is based on the amount |
| 10:17:21 | 9 | of cocaine and heroin that was sold to Mr. Collins as a |
| 10:17:27 | 10 | wholesale dealer and which he then supplied to other people. |
| 10:17:33 | 11 | I can proffer more information regarding the |
| 10:17:36 | 12 | discovery.  There's a couple of things I'd like to correct in |
| 10:17:40 | 13 | what Mr. Clancy has said. |
| 10:17:42 | 14 | THE COURT:  Okay. |
| 10:17:42 | 15 | MS. GUREN:  The first thing is the -- just to start |
| 10:17:46 | 16 | with the last thing he mentioned, the tax returns have |
| 10:17:49 | 17 | actually been provided to him and it shows a certified lack of |
| 10:17:53 | 18 | record for the filing of any tax returns through 2007. |
| 10:17:58 | 19 | There is, in fact, also information that he has |
| 10:18:04 | 20 | applied for a mortgage using a 2007 tax return.  The IRS has |
| 10:18:11 | 21 | no record of having any filings by him, that has actually been |
| 10:18:15 | 22 | provided to him today, so I don't know if he's had a chance to |
| 10:18:17 | 23 | look over it. |
| 10:18:18 | 24 | The second thing I want to correct is the use of the |
| 10:18:23 | 25 | word ensnare for these two informants.  As Mr. Clancy knows |

* * *REDACTED* * *

13

10:18:26  1   from looking at the discovery, this -- these were the main

10:18:29  2   suppliers to Mr. Collins through this time period.  He was

10:18:32  3   being supplied with an average of about 50 kilos a month of

10:18:36  4   cocaine.

10:18:37  5         So to say ensnare, the first conversation in which

10:18:41  6   the informant had with Mr. Collins was regarding the purchase

10:18:46  7   of cocaine.  It was only in later conversations that

10:18:49  8   Mr. Collins began to express nervousness and talk about

10:18:52  9   another person who had been recently arrested.

10:18:54  10        The third thing I wanted to bring up is the fact that

10:18:57  11  there's actually another part of this case, which is a

10:18:59  12  Title III investigation through the Central District of

10:19:02  13  Illinois, in which Mr. Collins was providing to customers down

10:19:07  14  there large amounts of cocaine and also it has been recorded

10:19:09  15  on Title IIIs in that information.

10:19:13  16        So there is two sides.  It is not just the people who

10:19:17  17  have been supplying him with things, but there's also these

10:19:19  18  Title IIIs in the Central District, which corroborates the

10:19:22  19  large amount of cocaine that he has been supplying each month.

10:19:25  20        The next thing I want to point out about Pretrial

10:19:29  21  Services' report and what Mr. Collins said to him, is if you

10:19:33  22  look in the forfeiture count, there is actually another

10:19:37  23  property, ▮▮▮▮▮▮▮▮▮▮, that our investigation believes is

10:19:40  24  in the name of Ron Collins, and that has not been mentioned to

10:19:43  25  pretrial as a property by Mr. Collins.

* * *REDACTED* * *

* * * REDACTED * * *

14

10:19:46  1      The other correction I would like to make or point I

10:19:50  2  would like to make regarding these nine months that he has

10:19:53  3  supposedly, you know, not been a flight risk or danger to the

10:19:57  4  community, he has tested positive for cocaine by Pretrial

10:20:02  5  Services.  So he was, in fact, using cocaine during this

10:20:04  6  period, obviously, therefore, having access to cocaine to use.

10:20:07  7  So he has been a danger to the community during this time

10:20:11  8  period.

10:20:11  9      In addition, I'm under the understanding that in

10:20:13  10  terms of this investigation, Mr. Collins was not -- did not

10:20:18  11  have a set residence that we knew he would be found at.  He

10:20:23  12  has put down Throop as his main address, that is also the

10:20:27  13  address on a lot of his credit card returns and financial

10:20:30  14  information.

10:20:30  15      However, as noted by Mr. Collins himself, he's not

10:20:33  16  there -- or I'm sorry -- he says that he's there twice a week,

10:20:37  17  but his mother actually says that -- who lives there has said

10:20:39  18  that he has not stayed there for fifteen years.  So that is

10:20:44  19  troubling as well.

10:20:45  20      I'm not sure if I -- I want to go back to the

10:20:47  21  forfeiture amount, if I have sufficiently answered it in terms

10:20:50  22  of the amount of cocaine.

10:20:51  23      THE COURT:  That's fine.

10:20:52  24      MS. GUREN:  Okay.  The other points to make is the

10:20:55  25  fact that he has had multiple aliases.  He has failed to

* * * REDACTED * * *

* * *REDACTED* * *

15

| | |
|---|---|
| 10:20:59 | 1 |
| 10:21:04 | 2 |
| 10:21:07 | 3 |
| 10:21:09 | 4 |
| 10:21:11 | 5 |
| 10:21:15 | 6 |
| 10:21:18 | 7 |
| 10:21:23 | 8 |
| 10:21:25 | 9 |
| 10:21:28 | 10 |
| 10:21:30 | 11 |
| 10:21:34 | 12 |
| 10:21:38 | 13 |
| 10:21:42 | 14 |
| 10:21:44 | 15 |
| 10:21:48 | 16 |
| 10:21:51 | 17 |
| 10:21:54 | 18 |
| 10:21:56 | 19 |
| 10:21:59 | 20 |
| 10:22:02 | 21 |
| 10:22:04 | 22 |
| 10:22:08 | 23 |
| 10:22:11 | 24 |
| 10:22:14 | 25 |

appear.  One of his aliases -- I don't know about this Ron C.
Johnson thing.  I'm taking pretrial's word on that.  I don't
know what the basis is for how they find things.

I think that they usually use Social Security numbers
and other identifiers and have a way of which confirming that,
so I'm not sure if the Ron C. Johnson thing is a mistake or
not.  But he certainly has used an alias at the age of 22 as
well, and that's past the age of fifteen and seventeen.

I think the fact that he does have these conflicting
residency information and the fact that there has been this
failure to disclose this other property is equally troubling
along with the fact that this is a presumption case and there
is a large amount of drugs at issue, which apply for both the
risk of nonappearance and for the danger to the community.

I'm also troubled, when I read the pretrial report,
by the fact that the mother, who was originally proposed as a
third-party custodian, seems to know so little about her son.
There's conflicting information about residency.  There's
actually conflicting information about how many grandchildren
she has.  She seems to believe she has four.  Mr. Collins said
that he has five children.

As far as the father as the third-party custodian, if
that is something that is raised, we would -- we haven't had a
criminal history check run on him or who else would be in the
residence.  And I don't know any information about his time

* * *REDACTED* * *

\* \* \*REDACTED\* \* \*

16

| | | |
|---|---|---|
| 10:22:18 | 1 | frame in terms of how many hours a week he works and whether |
| 10:22:21 | 2 | or not he's sufficiently around to supervise Mr. Collins.  So |
| 10:22:26 | 3 | that would -- obviously if that is the path that the Court |
| 10:22:28 | 4 | chooses to go down, we would be interested in making sure that |
| 10:22:32 | 5 | that was settled. |
| 10:22:35 | 6 | So ultimately, I think, based on many of the issues |
| 10:22:38 | 7 | raised by the pretrial -- I don't even think you need to |
| 10:22:41 | 8 | consider the crime.  Even just looking at the pretrial issues |
| 10:22:44 | 9 | raised, that's enough for detention, but then coupled on to |
| 10:22:48 | 10 | that, the large amount of cocaine that was being dealt in this |
| 10:22:50 | 11 | context, I think, warrants detention. |
| 10:22:52 | 12 | THE COURT:  Now, the potential sentence, if the |
| 10:22:59 | 13 | Government's case were to be proved, would be what? |
| 10:23:02 | 14 | MS. GUREN:  It would be a mandatory minimum of ten |
| 10:23:04 | 15 | years and a sentence [sic] of life. |
| 10:23:07 | 16 | THE COURT:  The range. |
| 10:23:07 | 17 | MS. GUREN:  The maximum, life. |
| 10:23:09 | 18 | THE COURT:  Yes.  Okay. |
| 10:23:10 | 19 | MR. CLANCY:  Judge, could I just respond -- |
| 10:23:12 | 20 | THE COURT:  Please. |
| 10:23:13 | 21 | MR. CLANCY:  -- very, very quickly. |
| 10:23:15 | 22 | THE COURT:  Absolutely. |
| 10:23:15 | 23 | MR. CLANCY:  Judge, as to the mother, you know, his |
| 10:23:19 | 24 | mother showed up in court not upon my request.  I did not |
| 10:23:25 | 25 | forward her as a third-party custodian.  I had asked for a |

***REDACTED***

17

10:23:28  1  continuance so I could talk to the whole family, figure out

10:23:33  2  what was the best option and who were the most responsible

10:23:36  3  people involved in Ron's life, and that's who I have with me

10:23:39  4  here in court today.

10:23:40  5      I cannot control what Ron's mother told pretrial.

10:23:46  6  And I would hate for Ron to be -- his bond chances to be

10:23:50  7  hampered by that.

10:23:51  8      The bottom line is is that Ron has had different

10:23:54  9  addresses throughout his young life and he's always used the

10:23:59  10  Throop address as a mailing address.

10:24:00  11      For the last year or so -- or year before his arrest,

10:24:04  12  he owned a house in South Holland, and that's where he was in

10:24:10  13  November and December of '08 when he learned about the

10:24:15  14  investigation.  And that's where he remained and that's where

10:24:18  15  he was arrested was at the address in South Holland, and

10:24:22  16  that's where he has primarily lived for the last year with his

10:24:27  17  girlfriend and child.

10:24:28  18      As far as investigation as to Mr. Leroy Johnson and

10:24:32  19  his wife Brenda, I have -- it will be a week today, I

10:24:40  20  believe -- maybe it was Monday -- but either Friday of last

10:24:43  21  week or Monday of this week, I contacted pretrial.  I gave

10:24:47  22  them Leroy Johnson's name, address, telephone number, and this

10:24:51  23  was the person.

10:24:52  24      And I've called Justin Wiersema, who's the person on

10:24:54  25  this case.  I called him this morning.  I called him

***REDACTED***

* * *REDACTED* * *

18

| | |
|---|---|
| 10:24:58 | 1 |

yesterday.  I called him the day before.  He told me he was

going to interview Mr. Leroy Johnson.

I had Mr. -- I had Leroy here in my offices at 8:30

this morning, had him in the -- or in front of the courtroom a

half-hour before.  And I've tried, as much as I can, to let

the Government and pretrial do their investigation of those

people that I'm relying on as much as I could.

So, Judge, based on that and my prior arguments, I'm

asking that he be given pretrial release.

THE COURT:  Okay.  Weighing the factors under 3142,

we do start with the fact that he has a presumption that he

should be detained, under the statute, based upon the amount

of drugs that have been alleged in the indictment and

proffered by the Government, so he is facing a mandatory

minimum of ten years in prison and a potential maximum of life

in prison, depending on the amount of drugs that could

eventually be proved up.

So that presumption then must be overcome by some

evidence that he is not a danger to the community or a flight

risk, and the evidence that we have to date is significantly

conflicting.

The first thing that we have is -- I know you're

concerned about his mother's statements impacting his place of

residence, but it is the defendant himself who placed his

mother into that position by informing Mr. Alvarez that he

* * *REDACTED* * *

* * * REDACTED * * *

19

| | |
|---|---|
| 10:26:25 | 1 |

stayed with his mother and grandmother about two nights per

week. She, of course, says that isn't true, that he hasn't

stayed at the house for fifteen years.

He states also that he has been employed but there's

no record of that employment, no tax returns, record of that

employment, and he said he's been employed in this Double R

Construction (phonetic) firm. There's no evidence that's been

presented to show that that's, in truth, the case. In fact,

his mother, when asked where he works, said he works at a

grocery store, that she wasn't even aware of where that was.

So there's conflict there as well.

He says he has regular contact with his siblings.

She says that he doesn't have contact with his siblings, that,

in fact, she sees him one time per week, but not that he's

staying there. So all of that is problematic as far as his

stability in the community and where he is currently staying.

That stability is exacerbated by the fact that he's

using cocaine. He tested positive for cocaine upon his

arrest, so he's getting illegal drugs somehow. He's entering

into the illegal drug trade somehow, even as a user at a bear

minimum. The allegations are, of course, that he is more of a

distributor at a significantly high rate.

The next thing that we look at to determine whether

he'll appear here in court is his history before judges in the

past. And unfortunately your history goes with you wherever

10:27:57    1    you go, and your history from starting out as a young man

10:28:01    2    shows that warrants needed to be issued on a regular basis

10:28:04    3    when you were young in order to get you to come to court.

10:28:09    4    Warrants were issued, bond forfeitures were entered, and there

10:28:13    5    was even a violation of bail bond when you were young.

10:28:19    6         All of these, though, show me that based upon that

10:28:22    7    with your six -- I'll say six criminal convictions -- I won't

10:28:27    8    even count the ones that he's contesting in Iowa and the

10:28:34    9    Burlington, Rock Island arrests -- his six convictions here

10:28:38   10    with, I think, eight times where he failed to listen to

10:28:42   11    another judge who told him to appear. So that does not show

10:28:48   12    that he has got a history of complying with court orders.

10:28:51   13         That, again, is exacerbated by the fact that he does

10:28:54   14    have other alias names and dates of birth and Social Security

10:28:58   15    numbers, which shows another intent to deceive, an intent to

10:29:03   16    hide a criminal history, and a potential for altering his own

10:29:08   17    identity in order to flee.

10:29:09   18         Facing a significant amount of time, now under arrest

10:29:13   19    under federal arrest, that might be a more distinct

10:29:18   20    possibility. Before he knew he might be arrested; now he is

10:29:22   21    actually arrested. So the idea of using alias names, dates of

10:29:25   22    birth, and Social Security numbers, not being candid about his

10:29:30   23    place of residence or about his income and his way of living

10:29:35   24    is all a concern for the Court, which I do not think overcomes

10:29:39   25    the presumption of detention in this case.

* * *REDACTED* * *

21

10:29:42  1        Aside from that, the allegations are extremely

10:29:46  2  serious, and the Government has proffered that there's

10:29:50  3  recorded calls about a significant amount of cocaine coming

10:29:54  4  from the Central District as well as the Chicago area cocaine,

10:29:58  5  and that the amount of forfeitable property is significant.

10:30:01  6        And the fact that he has not identified one of the

10:30:06  7  alleged properties that the Government has presented to the

10:30:07  8  grand jury as being his -- which they, of course, had to have

10:30:11  9  probable cause to allege that it was his -- the fact that he's

10:30:14  10  not willing to even admit that that's his, as far as a bond,

10:30:17  11  is another concern that there is other assets out there that

10:30:21  12  he could tap into either to flee or to continue his drug use

10:30:25  13  and his potential alleged illegal conduct of drug trafficking.

10:30:29  14        So I have not found that you've overcome the

10:30:32  15  presumption of detention, and I'm ordering that he remain

10:30:35  16  detained until he has trial.

10:30:37  17        So right now do we have a schedule for all of you for

10:30:41  18  the next time I see you?

10:30:43  19        MS. GUREN:  Your Honor, I believe we have a status on

10:30:44  20  October 14th.

10:30:45  21        THE COURT:  Okay.  And have you agreed to the

10:30:47  22  exclusion of time?  Yes, you did, until the 14th.  All right.

10:30:50  23        MR. CLANCY:  All right, Judge.

10:30:51  24        THE COURT:  All right.  So is there anything else

10:30:52  25  that needs to be raised by anyone else?

* * *REDACTED* * *

* * *REDACTED* * *

22

10:30:54  1    MS. GUREN:  Your Honor, at this point the Government

10:30:56  2    would seek early return of trial subpoenas.

10:30:58  3         THE COURT:  I assume you'd like that as well?

10:30:59  4         MR. CLANCY:  Yes, your Honor.

10:31:00  5         THE COURT:  Okay.  So I'll have that for both sides.

10:31:04  6    Early return of trial subpoenas is granted.

10:31:05  7         Anything else?

10:31:06  8         MR. CLANCY:  Judge, I have never tendered a CJA 24

10:31:09  9    form.

10:31:09  10        THE COURT:  Oh, please do.

10:31:10  11        MR. CLANCY:  I will tender this at this point.

10:31:14  12        Judge, I also have not submitted a financial

10:31:18  13   affidavit, and I am asking at this time that your Honor

10:31:24  14   acknowledge the fact that he is unemployed, in custody, and

10:31:29  15   that a financial affidavit has been hard for me to get

10:31:35  16   together for a number of reasons, one of which there are some

10:31:40  17   issues as to what can be submitted and to not incriminate

10:31:46  18   himself, to be blunt about it.  I mean, I can tell your Honor

10:31:49  19   that --

10:31:50  20        THE COURT:  You're seeking appointment based upon

10:31:53  21   indigence?

10:31:53  22        MR. CLANCY:  Yes.

10:31:53  23        THE COURT:  Okay.  Well, I need a financial affidavit

10:31:55  24   for that.  I'll give you more time to put that together --

10:31:58  25        MR. CLANCY:  Thank you.

* * *REDACTED* * *

* * *REDACTED* * *

23

| | |
|---|---|
| 10:31:58 | 1 |

THE COURT:  -- but I'll need a financial affidavit.
I can't make that finding until I -- I would like him
represented, of course, during this period of time while that
is being set forth.

MR. CLANCY:  Right.

THE COURT:  But that will need to be shared with the
Government as well, because they may challenge it, based upon
the fact that the --

MR. CLANCY:  Because there's so many angles that --
I've gotten some financial information, but I want to make
sure it's accurate before it's filed.

THE COURT:  That's fair enough.  But understand that
if you do seek appointment by the Court and the Government's
alleging he has assets, they can challenge those assets --

MR. CLANCY:  Correct.

THE COURT:  -- so it will need to be given to the
Government as well.

MR. CLANCY:  Very well.

THE COURT:  All right.  I'll see you on the 14th.
Good luck to you.

MS. GUREN:  Thank you.

(Concluded at 10:32 a.m.)

- - -

* * *REDACTED* * *

24

1
2
3
4                    C E R T I F I C A T E
5
6    I certify that the foregoing is a correct transcript from
7 the record of proceedings in the above-entitled matter.
8
9 /s/April M. Metzler, RPR, CRR, FCRR    September 18, 2009
10 April M. Metzler, RPR, CRR, FCRR        Date
11 Official Federal Court Reporter
12
13
14
15
16
17
18
19
20
21
22
23
24
25