***REDACTED***

1

01:22:58

```
1
2
3
4                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
5                          EASTERN DIVISION
6
7
    UNITED STATES OF AMERICA,          Case No. 1:09-cr-00673
8
       Plaintiff,                      Chicago, Illinois
9                                      December 2, 2009
            v.                         Motion Hearing
10
    RON COLLINS,
11
       Defendant.
12  ------------------------------
13
14                    TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE VIRGINIA M. KENDALL
15                  UNITED STATES DISTRICT JUDGE
16
17  APPEARANCES:
18
19  For the Government:    Office of the U.S. Attorney
                           By:  Lindsay C. Jenkins
20                         219 S. Dearborn St., 5th Fl.
                           Chicago, IL 60604
21                         (312) 353-5300
22
23
24
25
```

***REDACTED***

***REDACTED***

2

1

2

3  <u>APPEARANCES</u>:

4

5

6  For the Defendant:        Law Office of Kevin E. Milner
                             By:  Kevin E. Milner
7                            1627 W. Colonial Pkwy., Ste. 302
                             Inverness, IL 60067
8                            (312) 362-0006

9

10  <u>COURT REPORTER</u>:        FEDERAL OFFICIAL COURT REPORTER
                             April M. Metzler, RPR, CRR
11                           219 South Dearborn St., Rm. 2318-A
                             Chicago, IL 60604
12                           (312) 408-5154
                             April_Metzler@ilnd.uscourts.gov
13

14

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by mechanical stenography; transcript
25  produced by notereading.



***REDACTED***

* * *REDACTED* * *

3

| | |
|---|---|
| 01:33:24 | 1 |

(Commenced at 1:33 p.m.)

THE CLERK:  09CR673, United States versus Collins.

MS. JENKINS:  Good afternoon, your Honor.  Lindsay Jenkins, J-e-n-k-i-n-s, on behalf of the United States.

THE COURT:  Good afternoon, Ms. Jenkins.

MR. MILNER:  Good afternoon, your Honor.  Kevin Milner, M-i-l-n-e-r, on behalf of the defendant, who is present before the Court, Mr. Collins.

THE COURT:  Good afternoon, Mr. Milner.

And good afternoon, Mr. Collins.

THE DEFENDANT:  (Nodding.)

THE COURT:  Okay.  We have two things up.  I know there's a motion to reconsider the issue of detention, and then there's also the motion to be permitted contact visits.

Let's address the second one first.  I didn't know anything about the contact visits limitation.  I'm not sure I have any control over the contact visits limitation, other than you saying that I can order them to give them to him.  But for what reason and what's the policy?

MR. MILNER:  Basically, in my conversations, your Honor, I spoke to the sergeant over there and then, also, he directed me to the website.  And both he and the website said that it is available to the inmates, but only upon order of the Court.  There was no criteria listed as to why the Court should or shouldn't do that, other than just that it's

* * *REDACTED* * *

4

01:34:36    1    obviously a more preferable procedure for the inmate.  They

01:34:41    2    didn't say anything about any other information.

01:34:44    3            THE COURT:  Do you --

01:34:45    4            MR. MILNER:  They said if you grant the order -- or

01:34:47    5    if you grant my request, they'll execute the order.

01:34:49    6            THE COURT:  So right now it's a procedure where he's

01:34:53    7    videotaped -- essentially closed-circuit TV?  And if he gets

01:34:57    8    contact visits, he's between the glass partition?

01:35:00    9            MR. MILNER:  Yes.

01:35:00    10           THE COURT:  And a court order has to go into place in

01:35:04    11   order to allow him to have that?

01:35:05    12           MR. MILNER:  Yes.

01:35:06    13           THE COURT:  I don't understand.

01:35:07    14           MR. MILNER:  My exact words, your Honor.  But I was

01:35:09    15   clear with them that I wanted to make sure that I was

01:35:11    16   providing you with accurate information, and it's as simple as

01:35:14    17   that.  They will not do it without a court order.

01:35:18    18           It's just a little more work for them to go through

01:35:20    19   the contact visit as I am describing it, as opposed to the

01:35:22    20   closed circuit way.  They have a volume of prisoners there, so

01:35:22    21   they just simply prefer not to do it, if they don't have to.

01:35:27    22           THE COURT:  What's your insights into this, any?

01:35:29    23           MS. JENKINS:  Honestly, your Honor, the Government

01:35:30    24   takes no position.  I apologize, but we just -- there's

01:35:34    25   nothing -- there's no position for us to take in terms of --

* * *REDACTED* * *

5

01:35:37　1　　　　　THE COURT:  Well, normally I never order the prison

01:35:40　2　to do anything --

01:35:40　3　　　　　MS. JENKINS:  Right.

01:35:41　4　　　　　THE COURT:  -- because it's their procedures and

01:35:43　5　their programs.  And it's just an odd setup that they would

01:35:47　6　say, Well, okay, you can have these, if you get the court

01:35:51　7　order.

01:35:51　8　　　　　You know, let me look into it a little further.  I

01:35:54　9　might even make a call just to see what the situation is.

01:35:58　10　　　　　MR. MILNER:  That would be fine.  You know, with the

01:36:00　11　MCC, I know it's always been that way and we wouldn't ask the

01:36:01　12　Court to interfere --

01:36:01　13　　　　　THE COURT:  Right.

01:36:02　14　　　　　MR. MILNER:  -- nor do they want Court interference.

01:36:04　15　　　　　I think this might be slightly different because

01:36:07　16　we're dealing with the county jails that are contracting with

01:36:09　17　the federal government, so it's a little different from jail

01:36:11　18　to jail.  If your Honor could possibly inquire?

01:36:13　19　　　　　THE COURT:  Okay.  I'll take a look at it.

01:36:15　20　　　　　Okay.  Now, let's look at the issue of the

01:36:17　21　reconsideration.  I've read both of your written filings.  And

01:36:21　22　I know that, Mr. Milner, you've set forth some reasons why you

01:36:26　23　think I should reconsider.  And primarily you focus on some of

01:36:29　24　the statements that the Court made in its findings, but I'll

01:36:32　25　let you orally make your motion now.

* * *REDACTED* * *

* * *REDACTED* * *

6

01:36:34    1    MR. MILNER:  Yes, your Honor.  From my review of the

01:36:36    2  initial hearing, what seemed to me and quite properly was that

01:36:40    3  there was a heavy emphasis, at least initially, on

01:36:44    4  establishing the probable cause.  In other words, the evidence

01:36:47    5  to suggest that Mr. Collins would be guilty of the crime.

01:36:50    6    We are not contesting that for purposes of the bond

01:36:53    7  hearing.  And as the Court well knows, this wouldn't be the

01:36:55    8  time to do that anyway.  The only issue is not whether or not

01:36:58    9  Mr. Collins is guilty or has done other things in the past,

01:37:02   10  but simply whether or not there are any conditions or

01:37:05   11  combination of conditions that this Court can impose, which

01:37:09   12  would satisfy the Court that despite whatever the Court may

01:37:13   13  think about Mr. Collins' background, the Court could still

01:37:16   14  find some reasonable assurance that he's going to be in court

01:37:19   15  when he's supposed to and he's not going to be out breaking

01:37:22   16  the law and being a danger to the community.

01:37:24   17    THE COURT:  But what do you think I did improperly in

01:37:26   18  my detention?  What did I emphasize too much or what new

01:37:30   19  information do you have that would change my mind --

01:37:32   20    MR. MILNER:  A few things.

01:37:33   21    THE COURT:  -- about that first ruling?

01:37:36   22    MR. MILNER:  Okay.  First, your Honor, if I may, in

01:37:37   23  the initial -- and this I consider to be relatively minor, but

01:37:42   24  in response to your Honor's question -- there was a mistake

01:37:45   25  regarding -- the Court had seemed to take some umbrage with

* * *REDACTED* * *

***REDACTED***

7

01:37:48  1   the fact that family members were not aware of exactly where

01:37:52  2   Mr. Collins was sleeping or how many children he had or

01:37:55  3   whether or not he was having contact --

01:37:57  4        THE COURT:  I wasn't taking umbrage with their

01:38:00  5   statements.  It was just that it put his credibility into

01:38:05  6   question regarding the statements he gave to the probation

01:38:08  7   officer versus what they told the probation officer, which

01:38:10  8   made the Court uncomfortable that he wasn't being candid with

01:38:14  9   the Probation Office.

01:38:16  10       MR. MILNER:  Understood, your Honor.  And I guess

01:38:18  11  what I would say, first, was that there was a comment by the

01:38:21  12  Court that you were disturbed that Mr. Collins had stated that

01:38:23  13  he had contact with his siblings when, in fact, he did not.

01:38:27  14  That was an error.  The transcript reveals that the mother had

01:38:31  15  stated that he does, in fact, have contact with the siblings.

01:38:34  16  So the Court had been --

01:38:35  17       THE COURT:  But that's not an error.  I believe the

01:38:37  18  mother said that the siblings had contact, but the siblings

01:38:40  19  didn't say they had contact.

01:38:42  20       MR. MILNER:  I didn't see that in the transcript,

01:38:43  21  your Honor, and if it's there --

01:38:44  22       THE COURT:  Well, it's in the Pretrial Services

01:38:48  23  report.  We can take a look at it.  I don't think it was in

01:38:52  24  error.  I think, again, it was what did he tell the Court

01:38:55  25  versus what other individuals told the Court.  And of the many

***REDACTED***

* * *REDACTED* * *

8

01:39:00 1    factors that the Court took into account, that was probably

01:39:03 2    the least important of all of the factors, but it certainly

01:39:07 3    did weigh into question his candor with the Court.  Okay.

01:39:13 4        MR. MILNER:  Understood, your Honor.  And let me add

01:39:15 5    this, if I may.  And, again, quite humbly, I felt that the

01:39:19 6    discrepancies that the Court and the Government pointed out

01:39:22 7    were of the relatively minor variety.

01:39:25 8        I think this was not a situation where Mr. Collins

01:39:28 9    claimed that he lives with his mother and then we find out, in

01:39:32 10   fact, he does not.  He has a completely unrelated address.  I

01:39:36 11   think his comments were that he sees her three to four times a

01:39:39 12   week and stays there a couple of nights a week.  It turns out

01:39:42 13   he does see her on a weekly basis, but not three, four times,

01:39:46 14   and she denied that he was sleeping there.

01:39:48 15       Again, the fact is she says she knows he sleeps in

01:39:51 16   the area.  She knew the South Holland home.  Apparently, there

01:39:55 17   is enough family contact that they at least know what's going

01:39:59 18   on in each other's lives, and I just don't want to get too

01:40:03 19   caught up in what I consider to be minor discrepancies.

01:40:06 20       But the most important thing, Judge, when you asked

01:40:09 21   me if there was anything different, number one, in the first

01:40:11 22   detention hearing, what was proposed to the Court was that two

01:40:14 23   properties be posted that had equity, I want to say, of about

01:40:19 24   $50,000, give or take.

01:40:21 25       In this proposal, in the latest motion, we are

* * *REDACTED* * *

***REDACTED***

9

01:40:24  1   proposing that be a five time increase, in other words, we're

01:40:27  2   proposing $250,000 in unsecured property -- or secured

01:40:32  3   property, rather --

01:40:32  4        THE COURT:  How much?

01:40:33  5        MR. MILNER:  $250,000.  And we would clear all of

01:40:38  6   that with the Government, the properties.  There's obviously a

01:40:41  7   proper procedure so that we could come back to the Court and

01:40:44  8   tell the Court that, This is all legitimate property, it's

01:40:46  9   been executed properly, in terms of the quitclaim deeds and

01:40:50  10  everything else.  And should the Court grant the motion, we

01:40:52  11  would be ready to go.  That property would become the

01:40:55  12  Government's.

01:40:56  13       THE COURT:  Okay.  Let me address your motion in two

01:40:58  14  ways.

01:40:58  15       First, as far as the discrepancy in the family

01:41:02  16  statements to the probation officer and your client's

01:41:07  17  statements to the probation officer, those, as I mentioned,

01:41:09  18  are one of the least significant factors that the Court took

01:41:13  19  into account when I first detained the defendant.

01:41:18  20       And the factors that were much more significant

01:41:21  21  included the seriousness of the offense and that it was a

01:41:24  22  large amount of cocaine.  The fact that he was continuing to

01:41:28  23  use cocaine, you know, while he was being arrested.

01:41:31  24       That very big amount of forfeitable property of over

01:41:35  25  $3 million is a significant factor.

***REDACTED***

10

01:41:38　1　　　　　Also, his history of his failure to comply with court

01:41:43　2　orders.  Aliases and different dates of birth, I think we even

01:41:46　3　had different Social Security numbers, and those all pertained

01:41:50　4　to whether there was a flight risk.

01:41:52　5　　　　　And then it was just that coupled with the fact that

01:41:57　6　there were inconsistencies regarding where he is all of the

01:41:59　7　time and the fact that he has no evidence of being employed,

01:42:03　8　no verification of income, other than what would be the

01:42:06　9　illegal income.  So those were the more important factors.

01:42:09　10　　　　　But now let's turn to the next question, which is

01:42:12　11　that you've posed new property that you believe should give

01:42:18　12　the Court some assurance that he'll appear before me, which

01:42:22　13　doesn't address the dangerousness component.  I believe I

01:42:26　14　detained on both grounds and not just the flight risk grounds.

01:42:31　15　　　　　So let me hear from the Government.

01:42:32　16　　　　　MS. JENKINS:  Your Honor, just very briefly, we would

01:42:34　17　continue to seek detention for this particular defendant for

01:42:37　18　the reasons your Honor just talked about, also with regards to

01:42:43　19　the dangerousness grounds.

01:42:44　20　　　　　With regard to the property, perhaps it's because

01:42:46　21　counsel has provided some of this information or is aware of

01:42:49　22　these properties, but hasn't shared their specific addresses

01:42:51　23　with us to date -- which certainly he isn't required to do

01:42:54　24　until now.  I'm not familiar with who owns these properties,

01:42:59　25　how they came to be owned, if they're owned by the defendant.

***REDACTED***

* * *REDACTED* * *

11

01:43:02  1     I believe, and I could be wrong, but the indictment
01:43:05  2  may list one or two properties as forfeitable either as
01:43:10  3  substitute assets or -- but I frankly don't know whether or
01:43:14  4  not any of the proposed properties fits within properties that
01:43:20  5  the Government has already indicated we would be seeking to
01:43:22  6  forfeit.
01:43:22  7     To the extent that there are any such properties, the
01:43:27  8  Government's position on that would be that the defendant
01:43:29  9  should not be able to post property that he's really going to
01:43:33  10 lose anyway should he be convicted --
01:43:37  11     THE COURT:  But that would solely be the ones that
01:43:38  12 were named within the forfeiture count in the indictment.
01:43:42  13     MS. JENKINS:  Correct, correct.
01:43:42  14     Aside from any such property, the Government's
01:43:45  15 position would be that we would require some form of showing
01:43:47  16 not only of the property's value, but how they came to be
01:43:51  17 owned, assuming that they're owned by Mr. Collins, or if
01:43:54  18 they're even owned by family members how they came to be
01:43:58  19 purchased.
01:43:58  20     I believe under the Nebia hearing standards, the
01:44:01  21 Government is permitted to inquire as to the source of any
01:44:03  22 funds that would be posted for property.  In this case --
01:44:06  23 posted for bond in this case that would relate --
01:44:08  24     THE COURT:  Well, I don't disagree with that, and I
01:44:11  25 think a Nebia hearing would be required.  But whether or not

***REDACTED***

12

01:44:16    1    it suffices to assuage the Court's concerns regarding

01:44:18    2    detention is another issue.

01:44:20    3         The only property in the indictment is the ████████

01:44:24    4    ████ address.  Is that one of the properties you were going

01:44:27    5    to post?

01:44:27    6         MR. MILNER:  Judge, it was one of the properties

01:44:29    7    being considered, and I do want to address the properties.

01:44:32    8    But if I may, I might have gotten pulled out of context for a

01:44:36    9    moment through my own fault.

01:44:38    10        When I was advising the Court of the various matters

01:44:40    11   that I was raising anew in this particular motion, I mentioned

01:44:43    12   the $250,000 bond, but I didn't have an opportunity to just

01:44:47    13   mention a couple of other things that are new.

01:44:49    14        THE COURT:  Oh, okay.

01:44:50    15        MR. MILNER:  And not having been considered

01:44:52    16   previously.

01:44:52    17        THE COURT:  Okay.  Fair enough.

01:44:53    18        MR. MILNER:  Judge, one of the things I wanted to

01:44:55    19   discuss to you about and which I allude to in my motion is our

01:44:58    20   willingness to hire a private security firm.  And it doesn't

01:45:01    21   have to be anything all as ominous as some big detective

01:45:03    22   agency.  It can be whatever would satisfy the Court, but there

01:45:06    23   are many that I have contact with.  And what they basically

01:45:09    24   will do is provide 24-hour security at any particular

01:45:13    25   location, in this case, around the house where Mr. Collins

***REDACTED***

* * *REDACTED* * *

01:45:16   1   would be confined to.  He would not be able to leave the

01:45:19   2   house.  There would be a security firm monitoring him.  We

01:45:22   3   would pay for it.

01:45:23   4          THE COURT:  So what, the security firm is going to be

01:45:24   5   the custodian, and they're going to report to me if he walks

01:45:29   6   out the door?

01:45:29   7          MR. MILNER:  Yeah.

01:45:30   8          THE COURT:  And we'll bring all the employees of the

01:45:32   9   security firm here to put under oath and tell them that they

01:45:36   10  are going to be custodians.  Is that how you're going to

01:45:39   11  propose it?

01:45:40   12         MR. MILNER:  Whenever I come with my good ideas, you

01:45:42   13  guys always do this to me.  It actually is a pretty good idea,

01:45:46   14  and I understand it creates a lot of additional work, along

01:45:49   15  the lines of which your Honor is mentioning.  But I do think

01:45:52   16  it could be refined and fine-tuned to the point where it

01:45:56   17  wouldn't have to be quite all that complicated.

01:45:56   18         For example, it might very well be possible that all

01:45:59   19  the security people have to do is simply notify the people who

01:46:02   20  monitor the electronic surveillance.  Because he would also,

01:46:05   21  of course, be wearing the bracelet.

01:46:07   22         THE COURT:  Okay.

01:46:07   23         MR. MILNER:  And -- I'm sorry.

01:46:08   24         THE COURT:  Don't worry, Ms. Guren [sic].  We'll give

01:46:11   25  you a chance.

* * *REDACTED* * *

* * *REDACTED* * *

14

01:46:11　1　　　　　　　Are you done with the security firm proposal?

01:46:14　2　　　　　　MR. MILNER:  Pardon me?

01:46:14　3　　　　　　THE COURT:  Are you done with the security firm

01:46:16　4　proposal?

01:46:17　5　　　　　　MR. MILNER:  I am.  It just dovetails --

01:46:20　6　　　　　　THE COURT:  Since Ms. Guren's chomping at the bit --

01:46:21　7　　　　　　MS. JENKINS:  No, no.  I don't mean to interrupt.  He

01:46:24　8　can finish.

01:46:25　9　　　　　　THE COURT:  Okay.

01:46:25　10　　　　　MR. MILNER:  This is actually a small additional

01:46:27　11　point too.  The other thing I was going to suggest, either in

01:46:30　12　conjunction or as an alternative -- and, again, I am not a

01:46:33　13　techno-proficient guy -- but I'm aware of the availability of

01:46:37　14　webcams, and if we could somehow set that up again in the same

01:46:40　15　way to --

01:46:41　16　　　　　THE COURT:  That's another creative proposal.  I

01:46:46　17　haven't heard that one yet.

01:46:47　18　　　　　And then who's going to watch the webcam?

01:46:50　19　　　　　MR. MILNER:  People that we pay for.  Again, it would

01:46:52　20　be the same type of thing.  We would hire a licensed certified

01:46:55　21　security firm who would have to come into court, you know,

01:46:57　22　give you their bona fides, and swear on oath to do what they

01:47:03　23　do or else they're held in contempt of court and subject to a

01:47:03　24　crime just like anybody else would be.

01:47:09　25　　　　　THE COURT:  Okay.

* * *REDACTED* * *

* * *REDACTED* * *

15

| | | |
|---|---|---|
| 01:47:09 | 1 | MR. MILNER:  That was the end of it. |
| 01:47:10 | 2 | And, Judge, everything else are conditions that I |
| 01:47:14 | 3 | have listed already within my motion and conditions that were |
| 01:47:18 | 4 | made known to the Court previously. |
| 01:47:19 | 5 | THE COURT:  Okay.  And I've read your motion, okay, |
| 01:47:22 | 6 | so I have all of those as well. |
| 01:47:24 | 7 | Okay, Ms. Guren, do you want to respond? |
| 01:47:25 | 8 | MS. JENKINS:  Just briefly, your Honor.  I mean, at |
| 01:47:28 | 9 | the end of the day, if home incarceration or home detention |
| 01:47:32 | 10 | with electronic monitoring is not enough to ensure that this |
| 01:47:35 | 11 | defendant is where he's supposed to be and stay where he's |
| 01:47:38 | 12 | supposed to stay, I don't really see how a security firm or a |
| 01:47:41 | 13 | webcam, you know, could really enhance the security or the |
| 01:47:45 | 14 | ability of this defendant to show up. |
| 01:47:47 | 15 | I mean, the truth of the matter is the security firm |
| 01:47:49 | 16 | would have absolutely no ability to arrest this defendant. |
| 01:47:52 | 17 | They would have absolutely no ability to bring him before your |
| 01:47:55 | 18 | Honor and say, Your Honor, he's violated the conditions of |
| 01:47:57 | 19 | bond. |
| 01:47:58 | 20 | At most, he'd have the ability to -- at most, such a |
| 01:48:00 | 21 | firm would have the ability to do something similar to what |
| 01:48:04 | 22 | pretrial does, which is simply bring the matter to the |
| 01:48:06 | 23 | Pretrial Services' attention, at which time Pretrial Services |
| 01:48:10 | 24 | would bring it to your Honor's attention. |
| 01:48:12 | 25 | So, you know, while they are certainly creative |

* * *REDACTED* * *

| 01:48:14 | 1 | proposals, at the end of the day the Government's position is |

01:48:14  1   proposals, at the end of the day the Government's position is

01:48:17  2   that if the defendant can't be trusted so that -- such that

01:48:22  3   electronic monitoring with some sort of home incarceration

01:48:25  4   component isn't sufficient, I'm not sure why the expense and

01:48:29  5   additional effort of going through a home security -- or some

01:48:33  6   sort of private security firm would be appropriate.

01:48:35  7        At the end of the day it seems that if there can be

01:48:39  8   conditions that are crafted in the course of the normal

01:48:42  9   pretrial supervision -- a pretrial supervision component of

01:48:47  10  this where if, in fact, he should be let out on bond, which

01:48:51  11  the Government obviously opposes, then that should be

01:48:54  12  sufficient.

01:48:54  13       MR. MILNER:  One quick comment, Judge?

01:48:56  14       THE COURT:  Sure.

01:48:56  15       MR. MILNER:  For the Court's edification, obviously

01:49:00  16  what the security would do in a situation where if Mr. Collins

01:49:02  17  was leaving the house is call 9-1-1.  I mean, he would be

01:49:06  18  subject to an immediate arrest.  They would have probable

01:49:08  19  cause to believe a crime was being committed.  He would be

01:49:11  20  violating the conditions of his bond which is criminal.  The

01:49:14  21  second he would leave the house, any law enforcement agency

01:49:16  22  could arrest him.  They would simply need to call the local

01:49:20  23  police department.  Within three minutes there would be a

01:49:22  24  squad car placing him under arrest.

01:49:24  25       THE COURT:  What is the maximum penalty that he's

***REDACTED***

| | |
|---|---|
| 01:49:27 | 1 |
| 01:49:27 | 2 |
| 01:49:30 | 3 |
| 01:49:30 | 4 |
| 01:49:31 | 5 |
| 01:49:33 | 6 |
| 01:49:33 | 7 |
| 01:49:36 | 8 |
| 01:49:37 | 9 |
| 01:49:37 | 10 |
| 01:49:40 | 11 |
| 01:49:42 | 12 |
| 01:49:45 | 13 |
| 01:49:45 | 14 |
| 01:49:47 | 15 |
| 01:49:49 | 16 |
| 01:49:52 | 17 |
| 01:49:54 | 18 |
| 01:50:01 | 19 |
| 01:50:06 | 20 |
| 01:50:06 | 21 |
| 01:50:08 | 22 |
| 01:50:13 | 23 |
| 01:50:16 | 24 |
| 01:50:20 | 25 |

facing?

MS. JENKINS:  Your Honor, he's facing life imprisonment.

THE COURT:  And what is his mandatory minimum?

MS. JENKINS:  Mandatory minimum of ten years' imprisonment.

THE COURT:  And does he have an 851 enhancement?

MR. MILNER:  Not yet.

MS. JENKINS:  I do not know --

THE COURT:  Or is he 851 enhancement eligible?

MS. JENKINS:  He believe he -- I'd have to look at his criminal history briefly.  I don't know if Ms. Guren filed ...

THE COURT:  Oh, and I called you Ms. Guren.  Sorry.

MS. JENKINS:  Oh, that's okay.

It appears that he does have a -- he is 851 eligible, which would increase the mandatory minimum to ten [sic] years, based on a 2002 conviction for manufacture/delivery of cocaine.  So he would be subject to a twenty-year mandatory minimum.

MR. MILNER:  Actually, your Honor, the 2002 offense was a not guilty.  It's not a conviction.

MS. JENKINS:  You're correct.  I just read the report wrong.  I'm not aware of whether or not he has other drug convictions.  I just don't know.

***REDACTED***

* * *REDACTED* * *

18

01:50:26  1      THE COURT:  His first conviction is for receiving/
01:50:30  2  possessing/selling a stolen vehicle, and he got a DOC sentence
01:50:36  3  at that time.  He had a bond forfeiture for that one.
01:50:41  4      The next conviction was for a bond forfeiture.  There
01:50:44  5  was a warrant outstanding.
01:50:46  6      And then he had another violation of a bail bond.
01:50:49  7      And then he pled guilty and was sentenced to three
01:50:52  8  more years.  This is all when he's very young.
01:50:56  9      He pled guilty to another bail bond and got three
01:51:01  10  years, 1990.
01:51:07  11      He gets a burglary conviction in '90 as well, and
01:51:11  12  another bond forfeiture -- a judgment on the bond forfeiture.
01:51:16  13      He pleads guilty to the sale of a stolen motor
01:51:19  14  vehicle and some traffic offenses, gets another three years,
01:51:25  15  another bond forfeiture.
01:51:30  16      Another bond forfeiture in 1996, six years later.
01:51:35  17      And then he has an interference with some police
01:51:39  18  officers, a misdemeanor, that he gets about 90 days in jail
01:51:43  19  for.
01:51:48  20      And his 2002, he is found not guilty.
01:51:55  21      Four years later, in 2006 -- what --
01:52:00  22      MR. MILNER:  In Cook County, Judge --
01:52:02  23      THE COURT:  I know.  I monitor the Cook County jail
01:52:04  24  case, so I am aware, but --
01:52:05  25      MR. MILNER:  They just go on forever.

* * *REDACTED* * *

* * *REDACTED* * *

19

01:52:07  1    THE COURT:  He was put on bond in May of 2002 and

01:52:10  2  failed to appear in July of '05 and found not guilty in May of

01:52:15  3  '06.

01:52:16  4    But there is numerous aliases and dates of birth, and

01:52:23  5  he was using cocaine when he was arrested.

01:52:27  6    All right --

01:52:29  7    MR. MILNER:  Just for the record -- I'm so sorry to

01:52:32  8  interrupt -- just one comment regarding the '02 matter, your

01:52:34  9  Honor, that you brought up a moment ago, the one where it was

01:52:37  10  pending for four years.

01:52:38  11    THE COURT:  Right.

01:52:38  12    MR. MILNER:  You had mentioned that there was one

01:52:40  13  date where he hadn't shown.  There was evidence presented to

01:52:44  14  you -- I believe, and I might be wrong -- in the first

01:52:45  15  detention hearing where that apparently was a mistake.  It was

01:52:50  16  an excused absence on his part and his lawyer hadn't been

01:52:54  17  there.  I mention that only because as you're aware --

01:52:56  18    THE COURT:  Right.

01:52:56  19    MR. MILNER:  -- from the arguments presented, he went

01:52:58  20  to court for four straight years every month, never missed a

01:53:02  21  court date.  I think it's something important for your Honor

01:53:05  22  to consider simply because that is his very latest brush with

01:53:09  23  the law prior to this.

01:53:09  24    THE COURT:  Right.  And a more adult interaction with

01:53:12  25  law enforcement as opposed to the teen interaction, right?

* * *REDACTED* * *

* * * REDACTED * * *

20

01:53:16    1          MR. MILNER:  Yes, your Honor.

01:53:16    2          THE COURT:  I recognize that.

01:53:17    3          Well, all of your proposals go to the flight risk

01:53:23    4   component, and they don't satisfy the Court in two significant

01:53:28    5   ways, that he is unemployed, was unemployed, and was using

01:53:33    6   drugs when he was arrested.  So we don't have an individual

01:53:39    7   with a healthy tie to the community, as far as his daily

01:53:43    8   interactions.  But they do not -- your proposals do not

01:53:48    9   address the alternative ground that the Court detained

01:53:52   10   Mr. Collins on, and that's the danger to the community ground.

01:53:55   11          And this is a presumption case, based upon the amount

01:53:58   12   of drugs.  And he's facing the most significant amount of time

01:54:03   13   that he's ever faced in his life, which is a tremendous

01:54:06   14   incentive for some people to leave.

01:54:09   15          And, more importantly, the amount of drugs in this

01:54:13   16   charge are -- show a much more serious offense than the

01:54:19   17   offenses that he's had in his past.  The fact that he is now

01:54:24   18   facing that plus the other factors that I've mentioned already

01:54:31   19   don't assure me that there's much to reconsider here.

01:54:34   20          I have to say that there is another concern, which is

01:54:38   21   this tremendous amount of forfeitable property.  And the

01:54:43   22   forfeitable property that is -- you know, there's $3.2 million

01:54:50   23   that are subject to forfeiture.  And although the one

01:54:56   24   particular house is listed, the language of the forfeiture

01:55:04   25   count says that, It includes, but is not limited to the

* * * REDACTED * * *

* * *REDACTED* * *

21

| | | |
|---|---|---|
| 01:55:12 | 1 | substitute asset of that house. |
| 01:55:14 | 2 | So my understanding would be that anything he would |
| 01:55:16 | 3 | try to propose as property would be subject to forfeiture, |
| 01:55:21 | 4 | based upon this allegation. |
| 01:55:23 | 5 | MR. MILNER: Judge, I agree, if the property is his |
| 01:55:26 | 6 | and his alone. |
| 01:55:27 | 7 | THE COURT: Okay. Well -- and you haven't given me |
| 01:55:30 | 8 | any proposal yet, so I don't know what that is. |
| 01:55:32 | 9 | MR. MILNER: Judge, I think my initial feeling was to |
| 01:55:35 | 10 | see if your Honor would be receptive to the amount of the |
| 01:55:40 | 11 | equity, because if your Honor was not, I did not want to |
| 01:55:40 | 12 | create a bunch of extra work for everybody -- |
| 01:55:40 | 13 | THE COURT: Understood. Understood. Right. |
| 01:55:42 | 14 | Understood. |
| 01:55:43 | 15 | All right. Well, I don't think that the information |
| 01:55:45 | 16 | you provided -- it was very well done and I appreciate your |
| 01:55:49 | 17 | thoroughness, but it doesn't persuade me that I should change |
| 01:55:52 | 18 | my position. |
| 01:55:53 | 19 | So I'm going to keep him detained. I'm going to look |
| 01:55:57 | 20 | into this issue regarding the prison with McHenry County, |
| 01:56:02 | 21 | something I've never heard before. So that'll be entered and |
| 01:56:06 | 22 | continued, but I will rule by mail on that issue, so I'll just |
| 01:56:09 | 23 | give you a minute order, once I make the phone call. |
| 01:56:12 | 24 | And do we have a status for you next, do you know? |
| 01:56:16 | 25 | THE CLERK: We do. |

* * *REDACTED* * *

* * *REDACTED* * *

01:56:17  1      MS. JENKINS:  We do have a status on December 22nd.
01:56:20  2  One other --
01:56:20  3      THE CLERK:  That'll be reset, because the pretrial
01:56:23  4  motion schedule has to be extended.
01:56:25  5      THE COURT:  Oh, okay.  So pretrial motion schedule is
01:56:28  6  being extended, so the 22nd is going to be reset.
01:56:30  7      And what is the pretrial motion schedule, has it been
01:56:32  8  extended already?
01:56:33  9      THE CLERK:  Pretrial motions were extended to
01:56:35  10  December 10th.  The responses will be due January 8th, replies
01:56:40  11  January 22, and the new status would be February 11.
01:56:43  12      THE COURT:  Got it.  Okay.
01:56:44  13      MR. MILNER:  Your Honor, in light of the fact that --
01:56:47  14  well, not in light of the fact.
01:56:48  15      Would it be possible to have that date extended into
01:56:51  16  very early January for the pretrial motions?
01:56:53  17      THE COURT:  Wait, what was the date --
01:56:56  18      MR. MILNER:  December 10th and I had requested that
01:56:58  19  date.
01:56:58  20      THE COURT:  Right.
01:56:59  21      MR. MILNER:  But some time has passed, and there's
01:57:00  22  additional work that I do want to get done --
01:57:00  23      THE COURT:  To go through the discovery?
01:57:03  24      MR. MILNER:  Yes, ma'am.
01:57:03  25      THE COURT:  Yes, I certainly will do that.

* * *REDACTED* * *

* * *REDACTED* * *

23

01:57:05    1          So, Ms. Smith, let's start the pretrial motions --

01:57:08    2    when can you get them to me, Counsel?

01:57:09    3          MR. MILNER:  First week of January?

01:57:10    4          THE COURT:  Okay.  Do you want to pick a date for me?

01:57:14    5    Monday is the 4th and then Friday is the 8th.

01:57:17    6          MR. MILNER:  The 8th, please, your Honor.

01:57:19    7          THE COURT:  Okay.  So January 8th.  And then that

01:57:21    8    would be responses will be due then on January 22nd and

01:57:24    9    replies January 29.  And what would our status be then?

01:57:29   10          THE CLERK:  We could still keep February 11.

01:57:32   11          THE COURT:  No.  We'll move that out to March 12 --

01:57:36   12    or excuse me -- March 11.

01:57:37   13          THE CLERK:  March 11.

01:57:38   14          THE COURT:  At 1:30 in the afternoon.

01:57:40   15          Do you agree to the exclusion of time while we deal

01:57:42   16    with those pretrial motions?

01:57:43   17          MR. MILNER:  Yes, your Honor.

01:57:44   18          THE COURT:  Okay.  Time will be excluded until then,

01:57:47   19    and I'll look into the McHenry County situation.

01:57:50   20          All right.  Thank you.

01:57:51   21          MR. MILNER:  Thank you, your Honor.

01:57:51   22          MS. JENKINS:  Thank you, your Honor.

01:57:52   23          (Concluded at 1:57 p.m.)

           24                        - - -

           25

* * *REDACTED* * *

***REDACTED***

24

1
2
3
4
5          C E R T I F I C A T E
6
7     I certify that the foregoing is a correct transcript from
8   the record of proceedings in the above-entitled matter.
9
10  /s/April M. Metzler, RPR, CRR, FCRR    December 2, 2009
11  April M. Metzler, RPR, CRR, FCRR       Date
12  Official Federal Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25